FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 10, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ANN W.,[1]

                    Plaintiff,

          v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                    Defendant.

No.   4:20-CV-5015-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Ann W. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions, 2) discounting Plaintiff's symptom reports, and 3) improperly determining that Plaintiff did not meet or equal Listing 5.08 or the C Criteria of mental listings. In

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 10 & 11.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 10, and denies the Commissioner's Motion for Summary Judgment, ECF No. 11.

## I.     Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

economy—considering the claimant's RFC, age, education, and work experience.[14]
If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging an amended disability onset date of March 17, 2014.[18] Her claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Marie Palachuk.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since March 17, 2014, the amended alleged onset date;

---

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 210-15.

[19] AR 122-27 & 131-37. *See also* AR 118-21.

[20] AR 33-70.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step two: Plaintiff had the following medically determinable severe impairments: history of seizure disorder, bipolar disorder vs. major depressive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD);

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work except that she:

     is limited to frequent postural movements, and no climb[ing of] ladders, ropes, or scaffolds. She needs to avoid all exposure to hazards. She is able to understand, remember, and carry out simple tasks, as well as complex, detailed tasks. She is able to maintain attention and concentration for 2-hour intervals between regularly scheduled breaks, but she should be in a predictable environment with seldom change. Any interaction with the public or coworkers should be limited to no more than occasional, brief and superficial (i.e. non-collaborative and no teamwork).

- Step four: Plaintiff had no past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cleaner/housekeeping, marker/pricer, and cafeteria attendant.[21]

When assessing the medical-opinion evidence, the ALJ gave:

---

[21] AR 12-32.

- significant weight to the reviewing opinions of Patricia Kraft, M.D. and Elizabeth St. Louis, M.D;

- partial weight to the reviewing opinion of James Haynes, M.D.; and

- little weight to the treating opinions of Caleb Ledford, ARNP and Billie Kortge, M.A., the evaluating opinions of Rowena Mercado, M.D. and N.K. Marks, Ph.D., and the reviewing opinions of Colette Valette, Ph.D., Eugene Kester, M.D., and Kent Reade, Ph.D.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[22] AR 21-24.

[23] AR 21.

[24] AR 1-6.

[25] 42 U.S.C. § 405(g).

evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff challenges the ALJ's assignment of little weight to Dr. Marks' evaluating opinion, Ms. Kortge's treating opinion, and Mr. Ledford's treating opinion. The Court agrees the ALJ's reasons for discounting these medical opinions are either not meaningfully explained with legitimate/germane reasons and/or not supported by substantial evidence.

1.    Standard

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[33] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[34]

---

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[34] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

      When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[35] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[36] may be rejected for specific and germane reasons supported by substantial evidence.[37] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

---

14

[35] *Lester*, 81 F.3d at 830.

15

16

[36] *See* 20 C.F.R. § 416.902(a), (i) (For claims filed before March 27, 2017, acceptable

17

medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed

18

audiologists, licensed advanced practice registered nurses, and licensed physician

19

20

assistants within their scope of practice—all other medical providers are "other" medical sources.).

21

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

22

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

2.  <u>Dr. Marks</u>

On December 8, 2017, Dr. N.K. Marks conducted a psychological evaluation of Plaintiff, including reviewing psychological reports from 2013 and 2014.[39] Dr. Marks diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety disorder, unspecified bipolar disorder (rule-out), unspecified trauma- and stressor-related disorder, unspecified personality disorder, and unspecified cannabis-related disorder. Dr. Marks opined that Plaintiff was moderately limited in her abilities to ask simple questions or request assistance, communicate and perform effectively in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, set realistic goals and plan independently, and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. Dr. Marks opined that Plaintiff would improve with eight months of very directive counseling.

The ALJ gave little weight to Dr. Marks' opinion because 1) it was inconsistent with the objective clinical findings during the examination, 2) it was inconsistent with Plaintiff's presentation to treating sources, and 3) it reported an inability to work for less than twelve continuous months.[40]

---

[39] AR 1019-25.

[40] AR 23-24.

First, the ALJ's finding that Dr. Marks' opinion was inconsistent with the objective findings, i.e., Plaintiff's mental status examination and presentation as cooperative and well-groomed with good eye contact and intact cognitive functioning, is not, on this record, a meaningfully explained legitimate reason supported by substantial evidence. The ALJ fails to explain how Dr. Marks' assessed moderate limitations (with the remaining limitations being "none or mild") were inconsistent with Dr. Marks' mental status examination, Plaintiff's presentation, and the reviewed records. Dr. Marks reviewed two psychological reports, which were not part of this administrative record but were very briefly summarized by Dr. Marks. Per Dr. Marks, these reports indicated that Plaintiff suffered from depression and anxiety. Dr. Marks herself observed that Plaintiff was depressed and anxious with constricted affect. The ALJ fails to explain why Dr. Marks' moderate limitations was inconsistent with Dr. Marks' observations, review, and examination. For instance, if Dr. Marks had rated Plaintiff's limitations solely as none/mild, then Dr. Marks would have been essentially finding that Plaintiff's impairment was not severe.[41] Yet, even the ALJ, deemed Plaintiff to suffer from severe psychological impairments (bipolar disorder vs. major depressive disorder; anxiety disorder, and PTSD). And Dr. Kraft, whom issued a reviewing opinion in November 2016 to which the ALJ gave significant weight, opined that Plaintiff was moderately limited in her abilities to maintain

---

[41] *See* 20 C.F.R. § 416.920a(d)(1).

attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or makes plans independently of others.[42] Accordingly, Dr. Kraft's (accepted) and Dr. Marks' (discounted) opined moderate limitations were largely similar. Without a more meaningful explanation, that Plaintiff presented as cooperative, well-groomed with good eye contact, and intact cognitive functioning, is not a specific and legitimate reason on this record to discount Dr. Marks' moderate limitations given the observed depression, anxiety, and limited fund of knowledge, which was consistent with the prior psychological reports.[43]

---

[42] AR 113-15.

[43] *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding); *Blakes v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Second, the ALJ discounted Dr. Marks' opinion because it was not consistent with Plaintiff's candid presentation to treating sources in which Plaintiff was pleasant and cooperative with normal mood, affect, and behavior.[44] Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[45] Here, the ALJ cited several medical records: some pertaining to medical visits for physical conditions, a psychological evaluation by Rowena Mercado, M.D, and five therapy treatment notes with Ms. Kortge.[46] While relying on physical-treatment records to discount a mental-health opinion may be appropriate on a different record, on this record, in which Plaintiff's mental instability necessitated a five-day stay at a crisis center and routine counseling for more than four years, the physical-health records are insufficient to constitute substantial evidence to support the ALJ's finding that Dr. Marks' moderate limitations were inconsistent

---

evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[44] AR 23-24.

[45] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

[46] The ALJ also cited to 9F42; however, 9F only had 23 pages.

with Plaintiff's normal mood, affect, and behavior during these physical-health appointments.[47]

As to Dr. Mercado's cited psychological evaluation,[48] interestingly, the ALJ gave little weight to Dr. Mercado's opinion on the grounds that it was based largely on Plaintiff's self-reports and Dr. Mercado's unsubstantiated findings that Plaintiff had "conflicts with others," "poor sleep with nightmares," and "poor appetite with weight loss."[49] Dr. Mercado indicated that Plaintiff was depressed with high anxiety, fair insight and judgment, and some memory loss for past events; unable to complete serial 7s, spell world backwards, or follow a three-step command; and was neatly groomed, pleasant, and cooperative with good eye contact, fluent speech, linear thought process, and intact immediate memory.[50] The ALJ fails to

---

[47] The cited physical-health records include an oncology record recognizing that Plaintiff had "some unexplained symptoms such as unexplained weight loss, alternating diarrhea and constipation, and abdominal pain" and observing Plaintiff to have normal mood, affect, behavior, judgment, and thought. AR 887. Two other physical-health appointments related to treatment for an abscess; during these appointments, Plaintiff was observed to be pleasant, well kempt, not in distress, and cooperative with normal mood, affect, and behavior. AR 908 & 940.

[48] AR 374-76.

[49] AR 22-23.

[50] AR 376.

meaningfully explain how Dr. Mercado's observations—some normal, some abnormal—are inconsistent with Dr. Marks' moderate limitations.

Finally, the five therapy notes cited by the ALJ are not an accurate reflection of Plaintiff's waxing of her mental health symptoms as Plaintiff's symptoms were generally waning at the cited appointments. *See, e.g.*, AR 1172-73 (Aug. 2, 2017: "mood and affect were both a bit anxious"); AR 1170-71 (Sept. 17, 2017: "encouraged to speak with her medication provider about her often throwing up her medications" and "somewhat dysthymic which in part was due to the recent passing of two friends. Affect was at times tearful."); AR 1175-76 (Dec. 6, 2017: ("mood was slightly dysthymic and affect anxious as [Plaintiff] is continuing to live on under $200.00 a month); AR 1188-89 (July 11, 2018: "mood and affect were both euthymic"); & AR 1200-01 (May 30, 2018: "mood and affect were both euthymic and calm"). In comparison, there were many therapy notes, along with medication management notes and progress notes, documenting waxing symptoms. *See, e.g.*, AR 622, 628, 624, 550, & 562 (depressed and tearful affect and congruent mood); AR 560 (agitated and irritable); AR 612 (intense mood and affect); AR 590 & 606 (mood slightly dysphoric and affect intense); AR 722 (tearful throughout session, dysphoric mood and congruent affect); AR 694 (mood dysphoric with congruent affect); AR 684 (mood dysphoric and affect tearful, and encouraged to think about applying for social security disability); AR 596 & 711 (mood somewhat dysphoric and affect anxious); AR 706 (dysphoric and affect discouraged and anxious); AR 592 & 678 (dysphoric mood and tearful affect); AR 569 (mood dysphoric and affect

anxious and somewhat irritable); AR 583 (affect and mood anxious/depressed with restricted range); & AR 577 (cried through most of appointment). When the therapy notes, along with progress and medical management notes, are cumulatively viewed, they do not provide substantial evidence to support the ALJ's finding that Dr. Marks' opinion was inconsistent with Plaintiff's normal mood, affect, and behavior on several occasions.

But Dr. Marks also opined that Plaintiff's mental health impairments would sufficiently improve after eight months of very directive counseling.[51] Temporary severe limitations—those less than twelve months—are not enough to meet the durational requirement for a finding of disability.[52] Consistent with Dr. Marks' speculation that Plaintiff's mental health may improve by August 2018 (eight months after the examination), the record reflects that Plaintiff's symptoms, including her mood and affect, began to steadily wane, possibly due to continued therapy and significant medication changes. Nonetheless, as discussed above the medical record reflects that *before* Dr. Marks' December 2017 opinion Plaintiff's

---

[51] AR 1023.

[52] 20 C.F.R. § 416.909 (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *see Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").

mental health waxed and waned since the alleged onset date of March 17, 2014, including a multi-day stay at a crisis center. Therefore, on this record, that Dr. Marks' opined that Plaintiff's mental health symptoms would improve with eight months of therapy is not a legitimate reason supported by substantial evidence to discount Dr. Marks' moderate limitations without a more meaningful explanation.

   3.   Ms. Kortge

   Ms. Kortge held therapy sessions generally once or twice a month from March 2014 to November 2018.[53] In March 2017, Ms. Kortge completed a Mental Source Statement for social-security purposes.[54] She opined that Plaintiff was:

- mildly limited in her abilities to carry out very short simple instructions, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness;

- moderately limited in her abilities to understand and remember very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, interact appropriately with the general public, be aware of normal hazards

---

[53] *See, e.g.*, AR 638-39, 548-49, 556-57, 575-76, 590-603, 610-19, 647-48, 658-59, 667-68, 678-79, 684-85, 688-89, 690-91, 694-95, 700-12, 720-24, 1156-95, 1208-11, & 1214-34.

[54] AR 1254-57.

and take appropriate precautions, travel in unfamiliar places or use public transportation; and

- markedly limited in her abilities to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.

As to the B Criteria of mental listings, Ms. Kortge opined that Plaintiff was markedly limited in her ability to understand, remember, or apply information and moderately limited in her abilities to interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. Ms. Kortge opined that Plaintiff met the C Criteria of mental listings as she had a medically documented history of a mental disorder for at least two years and ongoing medical treatment, mental

health therapy, or psychological support had diminished the symptoms and signs but with only marginal adjustment in Plaintiff's capacity to adapt to changes in her environment or to demands that were not part of her daily life. Ms. Kortge opined that Plaintiff would be off-task more than thirty percent of the workweek and she would miss four or more days per month.

The ALJ gave little weight to Ms. Kortge's non-acceptable medical-source opinion on the grounds that her check-box opinion was not consistent with either the treatment notes or Dr. Kraft's opinion. Ms. Kortge, as a therapist, was an "other" (or non-acceptable) medical source.[55] The ALJ was to consider Ms. Kortge's opinion when assessing the severity of Plaintiff's impairments and how they affected her ability to work, and then offer specific and germane reasons for discounting the opinion.[56]

First, as to the ALJ's finding that Ms. Kortge's check-box opinion was inconsistent with the treatment notes, the ALJ did not offer meaningful analysis to support this bare-bones decision, but rather cited to the same medical records for which she discounted Dr. Marks' opinion, i.e., some medical visits for physical conditions, Dr. Mercado's psychological evaluation, and five of Ms. Kortge's therapy notes. As discussed above, these records do not serve as substantial evidence to

---

[55] *See* 20 C.F.R. § 416.902(a), (i).

[56] *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)); 20 C.F.R. § 416.913(a)(3) & (4).

support the ALJ's finding that Ms. Kortge's opinion was inconsistent with her treatment notes or other medical records, as the longitudinal mental-health record includes several years of therapy records and a five-day stay at a crisis unit in December 2016, reflecting that Plaintiff's mental health waxed and waned.[57]

Finally, the ALJ discounted Ms. Kortge's opinion because it was inconsistent with Dr. Kraft's opinion, to which the ALJ gave significant weight on the grounds that it was consistent with Plaintiff's presentation with treating sources, the objective findings in the record, and Dr. Kraft's specialized expertise in Social Security disability regulations and programs. Dr. Kraft opined that Plaintiff's activities of daily living were mildly restricted and her ability to maintain social functioning, concentration, persistence, or pace were moderately limited. Dr. Kraft opined that, although Plaintiff's concentration, persistence, and pace would vary, she would still be able to complete a normal workweek so long as she had superficial contact with the public and coworkers and had only simple variations in routine. While an ALJ may consider "the amount of understanding [that a medical source has] of our disability programs and their evidentiary requirements,"[58] Dr. Kraft reviewed the medical record in November 2016, *before* Plaintiff was admitted

---

[57] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (recognizing that a check-box opinion may not be rejected if it is consistent with treatment notes); *Garrison*, 759 F.3d at 1014.

[58] 20 C.F.R. § 416.927(c)(6).

to Transitions at Lourdes in December 2016 due to a mental health crisis and before subsequent therapy, progress notes, and medication management notes, which continued to reflect waxing and waning of Plaintiff's mental health symptoms until the summer of 2018 when Plaintiff's mental and physical symptoms appear to stabilize due to medication changes and continued therapy.[59] On this record, that Dr. Kraft's opinion was inconsistent with Ms. Kortge's opinion is not a germane reason supported either by substantial evidence or meaningful explanation to discount Ms. Kortge's opinion.

The ALJ failed to provide specific and germane reasons supported by substantial evidence as to why she discounted Ms. Kortge's opinion and/or failed to meaningfully explain how the RFC adequately addressed Plaintiff's record-supported limitations.

4.   ARNP Ledford

Beginning in September 2016, Nurse Caleb Ledford treated Plaintiff. In March 2017, Mr. Ledford completed a social-security medical report, indicating that he diagnosed Plaintiff with non-intractable cyclical vomiting with nausea, protein calorie malnutrition, and bipolar disorder.[60] He opined that Plaintiff's prognosis was poor and that work on a regular and continuous basis would cause her condition to deteriorate because increased stress led to more vomiting and

---

[59] AR 109-15.

[60] AR 1017-18.

weight loss, and that she would miss four or more days per month because she was generally symptomatic several days a month.

The ALJ gave little weight to Mr. Ledford's opinion because 1) it was a non-acceptable medical source opinion, 2) it was inconsistent with the findings and opinion of Dr. Haynes (the medical expert), and 3) it was supported by few objective findings and was speculative.[61]

Mr. Ledford, as a nurse, was a non-acceptable or "other" medical source.[62] The ALJ was to consider this "other" medical opinion when assessing the severity of Plaintiff's impairments and how they affect her ability to work, and then, if discounting the opinion, offer specific, germane reasons supported by substantial evidence for discounting the opinion.[63] The Court finds the reasons offered are either not specific, germane, or supported by substantial evidence.

First, the ALJ discounted Mr. Ledford's opinion because it was not consistent with Dr. Haynes' findings and opinion issued after reviewing all of the evidence in the record. An ALJ may give more weight to an opinion that is based on

---

[61] AR 23.

[62] *See* 20 C.F.R. § 416.902(a)(8) (including licensed physician's assistant as acceptable medical source for impairments within his licensed scope of practice "only with respect to claims filed . . . on or after March 27, 2017").

[63] *Molina*, 674 F.3d at 1111 (quoting *Turner*, 613 F.3d at 1224); 20 C.F.R. § 416.913(a)(3) & (4).

more relevant record review and supporting evidence.[64] Here, interestingly, the ALJ only gave partial weight to Dr. Haynes' opinion that Plaintiff did not have any resulting physical limitations or restrictions, because the ALJ determined that some exertional and non-exertional limitations were necessary to reasonably accommodate Plaintiff's history of seizure episodes.[65] Moreover, Dr. Haynes testified that he did not consider Plaintiff's weight loss and any gastrointestinal issues and he did not testify in regard to Plaintiff's vomiting and mental health conditions.[66] In comparison, the basis for Mr. Ledford's opinion that Plaintiff was limited by fatigue, malaise, mood swings, vomiting, and weight loss was that Plaintiff suffered side effects from her medications and her mental-health symptoms deteriorated with increased stress. Accordingly, the ALJ erred by not offering a more meaningful explanation as to why Dr. Haynes' testimony and opinion, which were not based on the conditions and symptoms considered by Mr. Ledford, are a germane reason for discounting Mr. Ledford's opinion.

Finally, the ALJ discounted Mr. Ledford's opinion because it was speculative and unsupported by objective findings. An ALJ may discount a medical opinion if it

---

[64] *See Lingenfelter*, 504 F.3d at 1042.

[65] AR 21-22.

[66] AR 41.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

is conclusory or inadequately supported.[67] But if treatment notes are consistent with the opinion, a conclusory opinion may not automatically be rejected.[68]Here, the ALJ found that Mr. Ledford provided "few objective findings to support the degree of limitation opined (i.e. a blanket statement that a regular work schedule would increase vomiting and weight loss does not explain why that would be the case)," and that Mr. Ledford's assessment that Plaintiff's limitations began in 2012 was not supported because he did not begin treating Plaintiff until September 2016.[69] At the initial office visit in September 2016, Plaintiff informed Mr. Ledford that she had struggled with weight loss, diarrhea, and nausea with vomiting for 3-4 years—a statement which is consistent with her reported symptoms in prior medical records.[70] In the September 2016 treatment note, Mr. Ledford noted that Plaintiff was underweight.[71] Mr. Ledford made similar findings in the treatment note two weeks later.[72] Mr. Ledford ordered a variety of objective tests and imaging

---

[67] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[68] *Batson*, 359 F.3d at 1195; *Garrison*, 759 F.3d at 1014.

[69] AR 23.

[70] AR 799-806; *see also* AR 1038 (recognizing that Plaintiff gained weight when on Seroquel and then lost weight when off Seroquel).

[71] AR 803.

[72] AR 807-13.

to assess the cause of Plaintiff's nausea, weight loss and vomiting; the tests results were largely normal.[73] Then in December 2016, Plaintiff was admitted to Lourdes' Transitions Unit for five days due to mental instability.[74] Following her release, Defendant continued to be below her target weight of 110-15 pounds.[75] Based on this record, the ALJ's finding, that Mr. Ledford's opinion (that Plaintiff's symptoms were exacerbated by her mental health conditions) is not supported by sufficient objective findings, is not based on substantial evidence or meaningful analysis.

5.    Harmful Error

The ALJ's cumulative errors when weighing Dr. Marks', Ms. Kortge's, and Mr. Ledford's opinions are consequential. The vocational expert testified that an individual who does not perform her job ten percent or more of the day will not be retained.[76] Each of these medical providers opined that Plaintiff was unable to sustain fulltime employment. While the ALJ may determine that an RFC

---

[73] AR 814, 821, & 866-77.

[74] AR 1027, 1121, & 1225.

[75] *See, e.g.*, AR 1065 (July 2017: 98 pounds) & AR 1053 (March 2018: 97 pounds). The medical records from TriCities Community Health include a Vital Signs chart, which lists that on at least six occasions Plaintiff's body mass index (BMI) was 17.37 or below. *See, e.g.*, AR 1057. However, it is unclear on what days these BMI readings were taken.

[76] AR 67.

sufficiently incorporates the aspects of these opinions which were supported by and consistent with the medical evidence, the ALJ did not so find and did not offer any analysis in this regard for the Court to meaningfully review.

**B.    Plaintiff's Symptom Reports: The ALJ is to reconsider on remand.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, her activities, and her work history.[77]

The ALJ's evaluation of Plaintiff's symptom claims and the resulting limitations relies heavily on the ALJ's assessment of the medical evidence. Having determined a remand is necessary to readdress the medical source opinions, any reevaluation must necessarily reassess Plaintiff's subjective symptom claims. As to Plaintiff's social interactions with family, friends, and boyfriend, the ALJ must more meaningfully explain how such interactions are inconsistent with Plaintiff's reported anxiety and PTSD experienced when she is in large group settings. On remand, the ALJ must carefully reevaluate Plaintiff's symptom claims in the context of the entire record.[78]

---

[77] AR 21.

[78] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

1

2

**C.    Step Three (Listings): The ALJ is to reconsider on remand.**

Plaintiff argues the ALJ erred by 1) finding that Plaintiff's low body mass index (BMI) did not meet or equal Listing 5.08 and 2) failing to properly evaluate whether Plaintiff met the C Criteria of the mental listings. Because this matter is being remanded for the ALJ's failure to adequately weigh the medical evidence, on remand the ALJ is to reconsider Plaintiff's step-three listing arguments.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court.[79] If the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings" unless the record reflects that no further proceedings are necessary because there is no serious doubt that the claimant is disabled.[80]

The Court finds further proceedings are necessary to resolve the conflicting medical and psychological opinions. There is serious doubt as to the cause and

---

[79] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[80] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

extent of Plaintiff's symptoms. For instance, was Plaintiff's nausea and vomiting caused by medications and/or her psychological conditions, and were/are her symptoms so limiting that she was/is unable to sustain fulltime work even if exertional and nonexertional limitations are crafted in the RFC? Resolution of the conflicts between the medical and psychological opinions requires further record development through either a consultative examination and/or additional expert testimony about whether Plaintiff's nausea, vomiting, and weight loss were caused by her medications or psychological conditions. If a consultative examination is ordered, the consultative examiner is to be given sufficient medical records to allow for a longitudinal perspective and the examiner is to either append the reviewed records to the report or clearly identify the reviewed records. In addition, the ALJ may consider seeking clarity as to the extent and scope of Plaintiff's nausea and vomiting, i.e., was it limited to a certain time period after taking her medication and/or was it alleviated if she took food/beverage with her medication. The ALJ is to then reweigh the medical opinions and Plaintiff's symptom claims and begin the disability evaluation anew.

**E.    Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 28

3.     The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

REVERSING and REMANDING the matter to the Commissioner of

Social Security for further proceedings consistent with this

recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.     The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 10th  day of November 2020.


s/Edward F. Shea
_____
EDWARD F. SHEA
Senior United States District Judge